**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **NICHOLAS DAVIDSON,** | ) | |
| **PLAINTIFF,** | ) | **COMPLAINT** |
| | ) | **TRIAL BY JURY DEMANDED** |
| **v.** | ) | |
| | ) | |
| **KUNES COUNTRY FORD** | ) | |
| **OF ANTIOCH, INC. d/b/a** | ) | |
| **KUNES COUNTRY AUTO GROUP** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

**COMPLAINT**

NOW COMES, Plaintiff, NICHOLAS DAVIDSON ("Plaintiff"), by through his attorneys,

Kreitman Law, LLC, with his Complaint against Defendant KUNES COUNTRY FORD OF

ANTIOCH, INC. d/b/a KUNES COUNTRY AUTO GROUP ("Defendant") and states as follows:

**PARTIES**

1. Plaintiff is a resident of this judicial district.

2. Plaintiff's sex and gender is male.

3. At all times material to this Complaint, Defendant had knowledge of Plaintiff's sex

and gender.

4. Defendant is an Illinois corporation and a resident of this judicial district.

5. Defendant is the entity operating an automobile dealership, located at 104 West IL

Route 173, Antioch, Illinois 60002 (the "Kunes Antioch Dealership").

6. Defendant also does business as the "Kunes Country Auto Group."

**JURISDICTION, VENUE, EXHAUSTION OF ADMINISTRATIVE REMEDIES**

7. This Court has original jurisdiction pursuant to 28 U.S.C. §1331 over the

retaliation claim arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §

1

2000e, *et seq.*, ("Title VII"). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367. Venue is proper in this judicial district as the facts and events giving rise to Plaintiff's claims occurred in this judicial district.

8.  Plaintiff has exhausted his administrative remedies as to Counts I and II and these claims are properly before this Court.

9.  On January 31, 2023, Plaintiff a filed *pro se* a timely charge of retaliatory discharge in violation of Title VII with the United States Equal Employment Opportunity Commission ("EEOC") against Defendant, Charge number 440-2023-02811 ("EEOC Charge").

10. The EEOC Charge was cross-filed with the Illinois Department of Human Rights ("IDHR") as a charge of retaliatory discharge in violation of the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/6-101(A), IDHR Charge Number 2023CR2146 ("IDHR Charge").

11.  The EEOC Charge and the cross-filed IDHR Charge named Defendant as its trade name "Kunes Country Auto Group".

12. Defendant appeared in the EEOC Charge matter.

13. On March 2, 2023, Defendant submitted its Response to the EEOC Charge and admitted it had employed Plaintiff.

14. On August 9, 2023, the EEOC issued Plaintiff a Notice of Right to Sue on the EEOC Charge and Plaintiff has timely filed this Complaint within 90 days of receipt of this notice.

15. On August 22, 2023, Plaintiff requested the IDHR adopt the findings of the EEOC with regard to the cross-filed IDHR Charge.

16. On September 13, 2023, IDHR issued Plaintiff an order of closure adopting the findings of the EEOC for the IDHR Charge and Plaintiff has timely filed this Complaint within 90 days of receipt of the Order of Closure.

17. Venue is properly placed in this District because the Defendant is transacting business in this District and because a substantial part of the events or omissions giving rise to the claim occurred in this District pursuant to 28 U.S.C. §1391(b)(2) and (3).

**FACTS**

18. On or about April 1, 2022, Defendant hired Plaintiff as a Special Finance Manager at the Kunes Antioch Dealership.

19. At all times material to this Complaint, Plaintiff was qualified for the position of Special Finance Manager.

20. In the course of the investigation of the EEOC Charge, Defendant submitted to the EEOC a copy of Plaintiff's job description in support of its response. **Complaint Exhibit A.**

21. During Plaintiff's employment with Defendant, Plaintiff's job description did not include the prospecting of new customer leads.

22. During Plaintiff's employment with Defendant, Plaintiff's primary job responsibilities did not include the prospecting of new customer leads.

23. During Plaintiff's employment with Defendant, Plaintiff's job description did not include organizing sales promotions and advertising as needed (i.e., used-car classifieds, large new display ads, radio, Internet etc.).

24. During Plaintiff's employment with Defendant, Plaintiff's primary job responsibilities did not include organizing sales promotions and advertising as needed (i.e., used-car classifieds, large new display ads, radio, Internet etc.).

25. During Plaintiff's employment with Defendant, Plaintiff's job description did not include the sale and delivery of a minimum number of vehicles per month.

26. During Plaintiff's employment with Defendant, Plaintiff's primary job responsibilities did not include the sale and delivery of a minimum number of vehicles per month.

27. During Plaintiff's employment with Defendant, Plaintiff's job description did not include the monitoring and contacting of new internet leads from the Defendant's website, dealer, manufacturer, and/or third party sites.

28. During Plaintiff's employment with Defendant, Plaintiff's primary job responsibilities did not include the monitoring and contacting of new internet leads from the Defendant's website, dealer, manufacturer, and/or third party sites.

29. During Plaintiff's employment with Defendant, Plaintiff's job description did not include meeting with sales representatives to establish annual and monthly objectives for unit sales.

30. During Plaintiff's employment with Defendant, Plaintiff's primary job responsibilities did not include meeting with sales representatives to establish annual and monthly objectives for unit sales.

31. During Plaintiff's employment with Defendant, Plaintiff's job description did not include establishing and/or following procedures for displaying, merchandising, and maintaining new and used vehicles.

32. During Plaintiff's employment with Defendant, Plaintiff's primary job responsibilities did not include establishing and/or following procedures for displaying, merchandising, and maintaining new and used vehicles.

33. Plaintiff was supervised by Art Palinski, Regional Special Finance Manager ("RSFM"), who worked primarily off-site from the Kunes Antioch Dealership.

34. RSFM Palinski's sex and gender is male.

35. During Plaintiff's employment with the Defendant, the General Manager of the Kunes Antioch Dealership was Jesse Fischer.

36. GM Fischer's sex and gender is male.

37. During Plaintiff's employment with Defendant the following individuals were employed by Defendant or were otherwise agents acting on behalf of Defendant in the following positions:

    a. Scot Hensel (male) was employed as the Special Financing Director ("SFD Hensel");

    b. Toni Muise (female) was employed as the Director of Human Resources ("DHR Muise");

    c. Jesse Fischer (male) was employed as the General Manager ("GM Fischer");

    d. Tony Walus (male) was employed as the Sales Manager ("SM Walus")

    e. Yvette Betke (female) was employed as the Office Manager ("OM Betke");

    f. Ally Biel (female) was employed as a Cashier; and

    g. Robert Green (male) was employed as a sales representative.

38. At all times material to this Complaint, Plaintiff performed to the legitimate employment expectations of Defendant.

39. Plaintiff never received any disciplinary action for misconduct or performance from Defendant prior to his termination on June 13, 2022.

40. Plaintiff was in fact praised for his performance on more than one occasion by RSFM Palinski.

**Plaintiff Reports to Defendant His Good-Faith, Reasonable Belief that the Former Special Finance Manager October Gamble Committed Forgery and Defrauded Customers**

41. Prior to Plaintiff's employment, October Gamble was a Special Finance Manager at the Kunes Antioch Dealership and regularly engaged in illegal, fraudulent and deceptive practices against consumers and lending institutions.

42. These illegal, fraudulent and deceptive practices were part of an on-going conspiracy to defraud customers and lending institutions. SFM Gamble participated in this conspiracy with Regional General Manager John Shaw, Phillip LaFata, Scott Kunes and Gregg Kunes, with the knowledge of Regional General Manager Stephany Whitted.

43. Regional General Manager John Shaw and Phillip LaFata were only terminated and October Gamble was demoted to sales representative following the filing of a whistleblower lawsuit of former employees of Kunes Country Auto Group dealerships in the Sycamore, Illinois area filed in the Circuit Court of the 23rd Judicial Circuit of DeKalb, Illinois, naming these individuals as part of this conspiracy.

44. Prior to Plaintiff's employment with Defendant, SFM Gamble, RGM Shaw and RGM Whitted were assigned to new dealerships acquired by the Kunes Country Auto Group in January 2021 in Sycamore, Illinois.

45. During Plaintiff's employment with Defendant, he was tasked with "cleaning up" the deals from SFM Gamble.

46. In November 2021, a female individual named with the initials M.A. believed she was being sold a used 2017 Ford Fusion by Defendant.

47. M.A. worked with Defendant's sales representative Mark Didier and Defendant's Finance and Insurance Manager Christopher Angelilli for the sale of a used 2017 Ford Fusion.

48. M.A. had her credit run at the Kunes Antioch Dealership and was told by SR Didier and FIM Angelilli that she did not qualify for financing of the used 2017 Ford Fusion.

49. M.A. was told by SR Didier and FIM Angelilli that she needed a cosigner.

50. With SR Didier and FIM Angelilli, M.A. called a number of potential co-signers including a male individual with the initials R.D.G.

51. R.D.G. agreed over the phone to come into the Kunes Antioch Dealership at some point to discuss being M.A.'s co-signer for her purchase of the used 2017 Ford Fusion

52. After the phone call, M.A. was presented with papers she thought were the sales and finance contract for the used 2017 Ford Fusion.

53. M.A. signed the papers and paid the required downpayment for the used 2017 Ford Fusion.

54. SR Didier and FIM Angelilli represented she had purchased the car and permitted her to take delivery of the car and drive the used 2017 Ford Fusion home.

55. On a later date, R.D.G. came to the Kunes Antioch Dealership and completed a credit application to start the co-signing process for M.A.'s purchase of the used 2017 Ford Fusion.

56. After being dissatisfied with the terms he left the dealership without co-signing for the vehicle.

57. Thereafter, SFM Gamble forged RDG's signature on a sales contract and finance contract for the used 2017 Ford Fusion.

58. In May 2022, RDG contacted Defendant through email asking why he was on the car loan for the used 2017 Ford Fusion for M.A. when he had refused to co-sign for the vehicle.

59.    RDG's email was printed on a "management connect notification" was left on Plaintiff's desk from the Office Manager Yvette Betke with notes written on it by OM Betke asking Plaintiff to contact the customer on or about May 20, 2022.

60.    A true and accurate photograph of the "management connect notification" with OM Betke's notes is attached as Exhibit B with RDG's personal information redacted. **Complaint Exhibit B**.

61.    Plaintiff found this "management connect notification" on his desk and approached GM Fischer about what the document. GM Fischer replied that he should find out from OM Betke.

62.    Plaintiff then approached OM Betke and OM Betke told Plaintiff he needed to follow up with the RDG to figure out what was being alleged by the customer.

63.    Plaintiff contacted R.D.G. who denied ever co-signing or purchasing the used 2017 Ford Fusion.

64.    Plaintiff then pulled the deal jacket with all of the documents related to the sale and financing of the used 2017 Ford Fusion.

65.    The documents reflected that R.D.G. bought and financed the used 2017 Ford Fusion.

66.    Plaintiff reviewed the handwriting and signatures on the copy of R.D.G.'s driver's license and credit application in the dealer jacket and found them not to match the handwriting and signatures on the sales contract or financing contract.

67.    Plaintiff was familiar with SFM Gamble's signature from addressing issues with her work on other deals.

68.    Due Plaintiff's reading and listening to RDG's complaints, his review of the inconsistent signatures and handwriting in the documents in the deal jacket and the perceived

match of the handwriting of the documents in the deal jacket with SFM Gamble's signature, Plaintiff formed a good-faith belief that SFM Gamble had illegally forged RDG's signature on the sales and financing contracts.

69. Plaintiff brought this to the attention of GM Fischer.

70. GM Fischer told Plaintiff to address the situation with RSFM Palinski.

71. Plaintiff told RSFM Palinski his conclusion and let RSFM Palinski know that RDG wanted to meet in person to discuss a resolution.

72. RSFM Palinski asked Plaintiff to leave RDG's deal jacket in his desk and told Plaintiff he would meet in person to discuss.

73. Plaintiff left the folder on RSFM Palinski's desk, and RSFM Palinski avoided meeting either Plaintiff or RDG to discuss Plaintiff's good-faith report of SFM Gamble's suspected illegal forgery.

74. RSFM Palinski then told Plaintiff that when he was at the Kunes Antioch Dealership he could not find the deal jacket.

75. On or about June 2, 2022, Plaintiff then took the RSFM's deal jacket out of the desk and placed it in his desk and texted a photograph of the deal jacket to RSFM Palinski to push RSFM Palinski to seriously address his report.

76. A true and accurate copy of this text message from Plaintiff to RSFM Palinski is attached as Exhibit C, with RDG's personal information redacted. **Complaint Exhibit C.**

77. RSFM Palinski never met with Plaintiff or RDG to Plaintiff's good-faith report that SFM Gamble forged RDG's signature.

78. As of the date of this signature, Defendant has taken no action to address Plaintiff's good-faith report SFM Gamble forged RDG's signature.

9

**Plaintiff is Violently Assaulted by Sales Representative Robert Green for Reporting SR Green's Apparent Intoxication**

79.     On June 3, 2022, Plaintiff had a good-faith belief that SR Green was intoxicated on alcohol and/or illegal substances while working at the Kunes Antioch Dealership, due to obscene and disruptive comments and erratic behavior, and other indicia of intoxication.

80.     After observing SR Green's apparent intoxication, Plaintiff asked one of the sales representatives to report it to SM Walus.

81.     After SR Green's erratic and apparently intoxicated behavior continued, Plaintiff directly contacted SM Walus to have SR Green removed from the premises.

82.     Plaintiff then returned to work in his office.

83.     SR Green then repeatedly confronted Plaintiff yelling at Plaintiff in Plaintiff's office, calling Plaintiff a "snitch" and about Plaintiff "throwing" SR Green "under the bus".

84.     After coming into Plaintiff's office more than once, SR Green entered Plaintiff's office through a back door and violently attacked Plaintiff, striking Plaintiff in the back of the neck.

85.     Plaintiff previously sustained life-threatening injuries in an automobile accident that required cervical fusion.

86.     SR Green struck Plaintiff at or near the location of the hardware left in Plaintiff's neck from the cervical fusion.

87.     This attack on Plaintiff by SR Green constituted the crime of battery, 720 ILCS 5/12-3.

88.     During the attack, Plaintiff observed SR Green stunk of alcohol.

89. Following the attack, SR Green was removed from the property and GM Fischer immediately told Plaintiff he was going to have to fire Plaintiff for "getting in a fight" since this was not "high school."

90. Plaintiff told GM Fischer he needed to get immediate medical attention, and GM Fischer told Plaintiff to wait.

91. Plaintiff had sustained serious injuries as a result of SR Green's attack.

92. Plaintiff waited, and GM Fischer then listened to Plaintiff's report of the criminal battery and other witnesses, reversed Plaintiff's termination and permitted Plaintiff to go seek medical treatment.

93. Neither GM Fischer, nor any other managers reported the attack against Plaintiff to the police.

94. Plaintiff did not call the police as he assumed they were already called. Plaintiff later learned from GM Fischer that no one called the police to report the violent battery.

95. After Plaintiff left the Kunes Antioch Dealership, GM Fischer informed Plaintiff to notify "Medcor", the Defendant's preferred medical clinic.

96. "Medcor" on its website advertises the goals to "reduce costs, avoid claims" on the "What We Do" section.

97. Plaintiff did report the attack and injury to "Medcor".

98. Plaintiff was directed to closed clinics on the day of the attack and was unable to be seen in an immediate care clinic until June 4, 2022. Plaintiff was restricted from work from June 4, 2022 – June 6, 2022.

99. On June 4, 2022, Plaintiff also reported the attack, his injuries and treatment to Palinski.

100. Plaintiff complied with all requests related to his medical treatment from Defendant.

101. On June 6, 2022, Plaintiff attended a follow up medical appointment for his injuries sustained on June 3, 2022, and was returned to work with sedentary restrictions.

102. Plaintiff discovered "Medcor" falsely recorded that Plaintiff was injured in a "fight" rather than as a result of an attack.

103. On June 7, 2022, Plaintiff then reported his account of the attack in an email to DHR Muise and notified her about his intention to make a police report related to the attack.

104. A true and accurate copy of the contents of this email from Plaintiff to DHR Muise is attached as Exhibit D. **Complaint Exhibit D**.

105. Shortly thereafter, DHR Muise contacted Plaintiff for a zoom meeting to discuss his email.

106. DHR then held a zoom call with Plaintiff discussing his email.

## Plaintiff Assists Ally Biel Reporting Sexual Harassment from SR Green

107. On June 7, 2022, when Plaintiff returned to work following his medical release, he was approached by Ally Biel, an 18-year old female cashier at the Kunes Antioch Dealership.

108. Ms. Biel's sister also worked for Defendant at the Kunes Antioch Dealership.

109. Ms. Biel informed Plaintiff had heard about SR Green's attack on Plaintiff, and told Plaintiff that she had been subject to unwanted romantic advances by SR Green and that she was scared for her safety and the safety of her sister.

110. Ms. Biel related to Plaintiff that in the course of the unwanted romantic advances, SR Green had been boasting to her about being arrested for gun possession and being on probation for charges.

111. Ms. Biel related to Plaintiff she had looked up SR Green's criminal docket and saw numerous violent charges for SR Green, including the gun charge he boasted about, and charges for animal abuse and domestic violence.

112. Ms. Biel related to Plaintiff that she had already complained to her supervisor "Penny" and that nothing was done. Ms. Biel told Plaintiff that if something was done in response to her complaint before SR Green's attack of Plaintiff, that the attack may not have happened.

113. Plaintiff was sympathetic to Ms. Biel and tried to help her as he reasonably and in good-faith believed SR Green's conduct constituted sexual harassment. Plaintiff told Ms. Biel that her car could be pulled up for her in the evenings and provided DHR Muise's email address and encouraged her to send in a formal complaint about SR Green's sexual harassment.

114. Ms. Biel agreed to send in a complaint about SR Green and worked on the draft with Plaintiff and Plaintiff's wife.

115. Ms. Biel eventually submitted this complaint about her sexual harassment and fears about her safety to Ms. Muise on June 11, 2022.

116. Plaintiff informed GM Fischer that he spoke with Ms. Biel and related she felt harassed by SR Green and unsafe. Plaintiff related to GM Fischer that Ms. Biel would be submitting a complaint soon.

117. GM Fischer made an innocuous response and did not engage Plaintiff on the issue who questioned GM Fischer what he would do if it was his daughter.

118. On June 13, 2022, GM Fischer and DHR Muise held a meeting with Ms. Biel and discussed her complaint. They questioned why Plaintiff assisted her complaint, and mentioned that she should not believe everything she hears from Plaintiff, as Plaintiff may have only conveyed "one side of the story" about being attacked.

119. On June 13, 2022, Plaintiff was at another follow up medical appointment for his injuries sustained in the June 3, 2022, attack.

120. On June 13, 2022, Plaintiff was terminated by Defendant because of his protected activity under Illinois common law, Title VII and the IHRA, and any other reasons alleged by Defendant are false and pretextual.

121. SR Green was charged with the crime of battery, 720 ILCS 5/12-3, for the June 3, 2022, attack on Plaintiff. *People v. Green*, 22CM0000157.

122. SR Green pled guilty to this crime. *People v. Green*, 22CM0000157.

123. SR Green served jail time for this crime. *People v. Green*, 22CM0000157.

124. In Defendant's Response to the EEOC Charge submitted to the EEOC, Defendant stated that SR Green was "terminated for coming to work under the influence of alcohol".

125. Defendant's Response to the EEOC Charge submitted to the EEOC did not state Defendant terminated SR Green for attacking Plaintiff.

126. Defendant did not terminate SR Green for attacking Plaintiff.

127. Defendant subsequently rehired SR Green following SR Green's attack against Plaintiff and sexual harassment of Ms. Biel.

128. Below is a true and accurate screenshot from the website www.dealerrater.com captured November 5, 2023, reflecting GM Fischer's response to a complaint against SR Green posted on October 11, 2023:

14

October 11, 2023
★☆☆☆☆
SALES VISIT - USED

**Don't deal with Robert.** I can't speak for the other sales reps. I spoke with Robert on the phone on a Monday to see if I could place a hold on the vehicle until wednesday by leaving a $500 deposit via credit card. Robert said he had to check with his manager. Robert came back to the call and said the $500 down was acceptable. I gave Robert my credit card info, he said he made the charge and a hold is on the vehicle. The next day I checked my bank account and no charge was made or was pending. I called back and spoke with a manager who told me that is not in there policy. I spoke with Robert on Wednesday about taking down my credit card info and the charge/vehicle hold that never happened. Robert kept changing his story saying he didn't take down the credit card number anywhere...then he said he typed it in...then he said he "ripped it up and threw it away". LESS

by mchess

| RECOMMEND DEALER | NO |
|---|---|

EMPLOYEES WORKED WITH
*Robert Green*

REPORT | PRINT

Oct 11, 2023 - *Kunes Ford of Antioch responded*
Good afternoon. My name is Jesse Fischer. I am the General Manager of Kunes Ford of Antioch. I want to apologize how this whole interaction went with Robert. I was the person you spoke with before you left. As we discussed before you left, contact me directly with any concerns.
LESS

129. Defendant has contested and has continued to contest Plaintiff's workers' compensation claim.

130. This Complaint was drafted by counsel and is not intended to be a complete or verbatim statement of Plaintiff and is subject to revision as additional information becomes available.

131. As a direct and proximate result of the Defendant's unlawful termination of Plaintiff, he has suffered loss of employment and income, loss of reputation, emotional distress, loss of future earning capacity, and has incurred attorney's fees and costs in this matter.

**COUNT I**
**Disparate Treatment (Retaliatory Discharge) in Violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3(a)**
**Plaintiff v. Defendant**

1-131. Plaintiff incorporates and realleges all preceding Paragraphs of this Complaint as though fully set forth herein this Paragraph of Count I of this Complaint.

132. At all times material to this Complaint, Defendant employed 15 or more employees.

15

133. At all times material to this Complaint, Defendant was an employer of Plaintiff within the meaning of Title VII. 42 U.S.C. § 2000e(a).

134. At all times material to this Complaint, Plaintiff was an employee of Defendant within the meaning of Title VII. 42 U.S.C. § 2000e(b).

135. At all times material to this Complaint, Title VII prohibited employers from retaliating against employees for engaging in the protected activity of opposing any practice unlawful under Title VII, including sexual harassment. 42 U.S.C. § 2000e-3(a).

136. As alleged herein this Complaint, Plaintiff's assistance rendered to Ms. Biel in escalating her report to DHR Muise of unwanted advances by SR Green that made her feel unsafe constituted protected activity under Title VII.

137. As alleged herein this Complaint, Plaintiff's own report of Ms. Biel's sexual harassment by SR Green to GM Fischer constituted protected activity under Title VII.

138. Defendant had actual and/or constructive knowledge of Plaintiff's Title VII protected activity.

139. Defendant terminated Plaintiff because of his Title VII protected activity, as well as for his other protected activity as alleged in this Complaint.

140. Defendant did not terminate employees similarly situated to Plaintiff who did not engage in Title VII protected activity.

141. Defendant, by and through its agents, engaged in the foregoing acts and conduct when it knew or should have known that the same were in violation of Title VII and any alleged reasons to the contrary are pretextual.

142. The retaliatory actions by Defendant, through its management, agents and employees, were intentional and willful, and in deliberate disregard of and with reckless

16

indifference to the federal laws, state laws, and the rights and sensibilities of Plaintiff and merit the imposition of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a. Judgement against Defendant for Plaintiff in an amount sufficient to fully compensate Plaintiff for all personal damages sustained, including but not limited to full compensation for his emotional distress, mental anguish, humiliation and loss of reputation in the maximum amount permissible under law;

b. Judgement against Defendant for Plaintiff in an amount sufficient to fully compensate Plaintiff for all pecuniary damages sustained, including but not limited to front pay, back pay, lost income and benefits in the maximum amount permissible under law;

c. Judgement against Defendant for Plaintiff for punitive damages in the maximum amount permissible under law;

d. Judgement against Defendant for Plaintiff for the reasonable attorney's fees and costs incurred by Plaintiff prosecuting this action;

e. Judgement against Defendant for Plaintiff for pre-judgment and post-judgment interest at the highest rate permitted by law; and

f. Any and all other relief that this Honorable Court may deem just and equitable.

## COUNT II
**Disparate Treatment (Retaliatory Discharge) in Violation of the Illinois Human Rights Act, 775 ILCS 5/6-101(A)**
**Plaintiff v. Defendant**

1-131. Plaintiff incorporates and realleges all preceding Paragraphs of this Complaint as though fully set forth herein this Paragraph of Count II of this Complaint.

132. At all times material to this Complaint, Defendant employed 1 or more employees in the State of Illinois.

133. At all times material to this Complaint, Defendant was an employer of Plaintiff within the meaning of the IHRA. 775 ILCS 5/2-101(B).

134. At all times material to this Complaint, Plaintiff was an employee of Defendant within the meaning of Title VII. 775 ILCS 5/2-101(A)..

17

135. At all times material to this Complaint, the IHRA prohibited employers from retaliating against employees for engaging in the protected activity of opposing any practice the employee reasonably and in good-faith believed to be sexual harassment. 775 ILCS 5/6-101(A).

136. As alleged herein this Complaint, Plaintiff's assistance rendered to Ms. Biel in escalating her report to DHR Muise of unwanted advances by SR Green that made her feel unsafe constituted protected activity under IHRA.

137. As alleged herein this Complaint, Plaintiff's own report of Ms. Biel's sexual harassment by SR Green to GM Fischer constituted protected activity under the IHRA.

138. Defendant had actual and/or constructive knowledge of Plaintiff's IHRA protected activity.

139. Defendant terminated Plaintiff because of his IHRA protected activity, as well as for his other protected activity as alleged in this Complaint.

140. Defendant did not terminate employees similarly situated to Plaintiff who did not engage in IHRA protected activity.

141. Defendant, by and through its agents, engaged in the foregoing acts and conduct when it knew or should have known that the same were in violation of IHRA and any alleged reasons to the contrary are pretextual.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

   a. Judgement against Defendant for Plaintiff in an amount sufficient to fully compensate Plaintiff for all personal damages sustained, including but not limited to full compensation for his emotional distress, mental anguish, humiliation and loss of reputation;
   b. Judgement against Defendant for Plaintiff in an amount sufficient to fully compensate Plaintiff for all pecuniary damages sustained, including but not limited to front pay, back pay, lost income and benefits;
   c. Judgement against Defendant for Plaintiff for the reasonable attorney's fees and costs incurred by Plaintiff prosecuting this action;

d. Judgement against Defendant for Plaintiff for pre-judgment and post-judgment interest at the highest rate permitted by law; and

e. Any and all other relief that this Honorable Court may deem just and equitable.

## COUNT III
### Retaliatory Discharge Under Illinois Common Law
### Plaintiff v. Defendant

1-131. Plaintiff re-alleges and restates Paragraphs 1-131 of this Complaint as if set forth fully herein this Paragraph of Count III of this Complaint.

132. At all times material to this Complaint, Defendant was an "employer" of Plaintiff within the meaning of Illinois common law and the Illinois Workers' Compensation Act ("IWCA"), 820 ILCS 305/1(a).

133. At all times material to this Complaint, Defendant was an "employer" of Plaintiff within the meaning of Illinois common law and the IWCA 820 ILCS 305/1(b).

134. At all times material to this Complaint, Illinois common law prohibited employers from discharging employees in retaliation for reporting to the employer activity the employee in believed reasonably and in good faith to be criminal and contrary to the clearly mandated public policy of Illinois. *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 421 N.E.2d 876 (Ill. 1981).

135. At all times material to this Complaint, Illinois common law has recognized Section 4(h) of the IWCA, 820 ILCS 305/4(h), as clearly mandated public policy prohibiting the discharge of employees in retaliation for accessing or in anticipation of accessing any rights afforded to employees under the Illinois Workers' Compensation Act. *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 179 (Ill. 1978).

136. As alleged herein this Complaint, the Plaintiff engaged in protected activity under Illinois common law when he reported to Defendant his reasonable good-faith belief that SFM

Gamble forged R.G.D.'s signature on the sales contract and finance contract for the used 2017 Ford Focus in violation of a number of Illinois and federal laws, including but not limited to the Illinois crime of forgery, 720 ILCS 5/17-3 and the federal crimes of bank fraud 18 U.S.C. § 1344 and wire fraud 18 U.S.C. § 1343.

137. As alleged herein this Complaint, the Plaintiff engaged in protected activity under Illinois common law when he reported to Defendant his reasonable and good-faith belief that SR Green committed the crime of battery in violation of Illinois law, 720 ILCS 5/12-3.

138. As alleged herein this Complaint, the Plaintiff engaged in protected activity under the Illinois common law when he accessed the following rights under the IWCA:

   a. Reported his injury sustained while working for Defendant on June 3, 2022;

   b. Sought and obtained first aid for his injury sustained on June 3, 2022;

   c. Accurately reported the extent of the injury as his condition continued to deteriorate;

   d. Began a course of medical treatment for his injuries sustained on June 3, 2022;

139. Prior to Plaintiff's discharge, Defendant anticipated Plaintiff to access other rights which he subsequently did attempt to access including:

   a. Filing an Application for Adjustment of Claim (Application for Benefits) with the Illinois Workers Compensation Commission for his workplace injuries sustained on June 3, 2022;

   b. Attempting to secure payment for medical treatment required for his workplace injuries sustained on June 3, 2022;

   c. Attempting to secure temporary total disability benefits for the period which he was unable to work for his workplace injuries sustained June 3, 2022; and

d. Attempting to secure payment of injury permanency benefits for the workplace injuries sustained June 3, 2022.

140. Defendant's discharge of Plaintiff in retaliation for his aforementioned protected activity was in violation of the clearly mandated public policy of Illinois and constituted the Illinois common law tort of retaliatory discharge.

141. Defendant's conduct was willful, wanton, reckless and/or deliberate which justifies imposition of punitive damages.

WHEREFORE, Plaintiff, respectfully requests this Court enter judgment against Defendant as follows:

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a. Judgement against Defendant for Plaintiff in an amount sufficient to fully compensate Plaintiff for all personal damages sustained, including but not limited to full compensation for his emotional distress, mental anguish, humiliation and loss of reputation;
b. Judgement against Defendant for Plaintiff in an amount sufficient to fully compensate Plaintiff for all pecuniary damages sustained, including but not limited to front pay, back pay, lost income and benefits;
c. Judgement against Defendant for Plaintiff for punitive damages;
d. Judgement against Defendant for Plaintiff for the costs incurred by Plaintiff prosecuting this action;
e. Judgement against Defendant for Plaintiff for pre-judgment and post-judgment interest at the highest rate permitted by law; and
f. Any and all other relief that this Honorable Court may deem just and equitable.

21

TRIAL BY JURY DEMANDED.

Respectfully submitted,

By: __/s/ Nicholas Kreitman, Esq.
    Nicholas Kreitman
    One of Plaintiff's Attorney

Nicholas Kreitman, Esq.
#6313283
Kreitman Law, LLC
505 North La Salle Dr., Suite 500
Chicago, IL 60654
(847) 970-0575
njk@kreitmanlaw.com

22